**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br> vs.<br><br>JOHN EMMANUEL FERRON,<br><br>      Defendant. | Case No. 3:07-cr-00142-JWS-JDR<br><br>**<u>RECOMMENDATION<br>REGARDING<br>MOTION TO VACATE<br>PURSUANT TO 28 U.S.C. § 2255</u>**<br><br>Docket 53 |

    Petitioner John Emmanuel Ferron filed a Motion to Vacate his sentence pursuant to 28 U.S.C. § 2255 at Docket 53. Following appointment of counsel, Ferron filed an Amended Petition, through counsel, at Docket 73. The Government filed its Answer at Docket 74. The Court ordered counsel for Mr. Ferron to file a brief regarding the retroactivity of *Padilla v. Kentucky*[1] and the applicable statute of limitations for the filing of his Petition.[2] Petitioner filed his brief at Docket 84 and the Government filed its Response at Docket 85. Neither party requested an evidentiary

---

[1] 130 S.Ct. 1473 (2010).

[2] *Minutes of the United States District Court*, Docket 80.

hearing. The matter is now ripe for decision.

For the reasons stated below, the Magistrate Judge recommends the Court DENY PETITIONER'S MOTION TO VACATE.

## I. Factual History

Mr. Ferron entered the United States illegally in December of 1972 after traveling to the United States by ship from Jamaica.[3] He was reported to the government for his illegal entry and located in October of 1973. Some time after October of 1973, but before December of 1974, Mr. Ferron illegally reentered the United States and enlisted in the United States Navy under the name Clyde Steele.[4] Mr. Ferron was honorably discharged from the military and began working for the Merchant Marines.

Between 1992 and 2007, Mr. Ferron used the name Clyde Steele to, among other things, apply for and receive loans, open bank accounts, obtain credit cards, apply for a passport and apply for and receive public assistance and veterans benefits.[5] Throughout his life, Mr. Ferron also experienced mental health issues and intermittently used illegal drugs.[6]

In 2007, Mr. Ferron was indicted in an 11-Count Indictment for crimes

---

[3] *Sentencing Recommendation*, Docket 41-2, p. 5.

[4] *Id.*

[5] *Id.* at pp. 3-7.

[6] Docket 41-2, pp. 22-23.

relating to Identity Theft and Social Security and Passport Fraud.[7] Mr. Ferron was arrested on December 19, 2007, in California, had his initial appearance in the Northern District of California on December 20, 2007, and was arraigned in Anchorage on February 15, 2008.[8] Following his arrest in December 2007, Immigration and Customs (ICE) placed an immigration hold on the Defendant.[9]

Mr. Ferron entered into a plea agreement which encompassed the crimes identified in the Indictment with the exception of Count 3, Passport Fraud, which was dropped pursuant to the plea agreement.[10]

At the Change of Plea hearing, the Court inquired as to Mr. Ferron's competency. Dr. Aron Wolf, Psychiatrist, testified that the Defendant, though he had mental health issues, he was able to understand the consequences of his plea agreement, including that he was aware of the risk of deportation.[11] The Court also inquired as to whether Mr. Ferron was aware that his plea agreement would likely

---

[7] *Indictment*, Docket 1.

[8] *Minutes of Arraignment on Indictment*, Docket 12.

[9] *United States' Answer to Defendant's Amended Petition Under 28 U.S.C. § 2255*, Docket 74, Exhibit 1.

[10] *Transcript of Proceedings, Proposed Change of Plea*, Docket 67, tr. 19; and *see*, *Amended Petition*, Docket 73, p. 1.

[11] Docket 67, tr. 9.

result in his deportation.[12]  Mr. Ferron acknowledged this fact.[13]

Mr. Ferron was sentenced pursuant to his plea agreement on March 26, 2009 to a term of 39 months.[14]  At the sentencing, Dr. Wolf testified again as to Mr. Ferron's mental state and his competency.[15]  Counsel for the Defendant, Sue Ellen Tatter, gave the Defense's sentencing recommendation, specifically recognizing that the Defendant would inevitably be deported and that he is subject to ICE custody upon release following his sentence.[16]  During his allouction, Mr. Ferron, himself, recognized he would be deported following his sentence.[17]  And, the Court again acknowledged that the Defendant would likely be deported as a consequence of his plea.[18]

## II.   Procedural History

Consistent with the terms waiving his right to appeal in his plea agreement, Mr. Ferron did not file a direct appeal in his case.  As such, his

---

[12] *Id.* at tr. 25.

[13] *Id.*

[14] *See* Docket 73, p. 2.

[15] *Partial Transcript of Proceedings, Imposition of Sentence*, Docket 68, tr. 5-31.

[16] *Id.* tr. 32.

[17] *Id.* tr. 37.

[18] *Id.* tr. 40-41.

conviction became final no later than April 15, 2009.[19] Following his release from the Bureau of Prisons after his serving sentence in his federal criminal matter (including credit for time served) on September 27 2010, Mr. Ferron was detained by ICE pending deportation proceedings.[20] He filed his § 2255 petition on October 7, 2010, more than a year after his sentence became final.[21]

Consistent with 28 U.S.C. § 2255(f), a petitioner must file a motion to vacate within one year after his conviction is made final. There are only a few exceptions to this rule. One of the exceptions is contained in § 2255(f)(3) which states that the limitations period shall run from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."

Here, Mr. Ferron argues that the Supreme Court's decision in *Padilla* applies to his case, that he was not properly advised as to the risk of deportation as

---

[19]Docket 74, p. 3-4.

[20]*Id*. at p. 2; Docket 74, Exhibit 4; Docket 74, p. 4. Both parties agree that while the Defendant is no longer in Bureau of Prison custody, the fact that he is being held pursuant to an ICE Detainer and is still on probation is sufficient to meet the threshold requirements for custody in a 28 U.S.C. § 2255 petition. *See* Docket 84, pp. 1-2; Docket 85, p. 2; and, *see U.S. v. Hurtado-Villa*, Nos. CV-10-01814-FJM(MHB), CR-08-01249-PHX-FJM, 2011 WL 4852284, p.2 (D.Ariz., Aug. 12, 2011) (". . . a federal defendant who is 'subject to supervised release . . . is in 'custody' 'and therefore 'may seek relief pursuant to 28 U.S.C. § 2255.'") (quoting *Mantus-Leva v. U.S.*, 287 F.3d 758, 761 (9th Cir. 2002) (citations omitted)).

[21]Docket 53; Docket 74, p. 4.

a consequence of his plea, and that his petition is timely filed as the rights expressed in the *Padilla* opinion fall within the exception contained in § 2255(f)(3).[22] The *Padilla* decision was decided on March 31, 2011. Therefore, if *Padilla* meets the definition in § 2255(f)(3), Mr. Ferron's petition is timely.

### III. *Padilla* and Retroactivity

In *Padilla*, the United States Supreme Court held that counsel must advise defendants of deportation consequences in order to comply with the definition of constitutionally competent counsel outlined in *Strtickland v. Washington*.[23] More specifically, "[b]efore deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel."[24] This includes advisement on the risk of deportation.[25]

The Court in *Padilla* makes no specific statement regarding retroactivity of the decision. But, the Court does state that the decision "will not open the floodgates to challenges of convictions obtained through plea bargains."[26] This implies that the Supreme Court intended *Padilla* to apply retroactively. Unfortunately, to date, there is no ruling by the Supreme Court on the issue of

---

[22] Docket 84.

[23] *Padilla* at 1478; 466 U.S. 668 (1984).

[24] *Padilla* at 1480-81 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (parallel citations omitted).

[25] *Id*. at 1482.

[26] *Id*. at 1477.

retroactivity.

Courts apply *Teague v. Lang* in order to determine whether a case announces a "new rule . . . not dictated by precedent existing at the time the defendant's conviction became final."[27] *Teague* established two categories of cases: new rules and old rules. A new rule applies retroactively for cases on collateral review if one of two exceptions apply:

> (1) the new rule places certain kinds of criminal conduct beyond the power of the criminal law-making authority to proscribe; or (2) the new rule is a "watershed rule[ ] of criminal procedure" that "alter[s] our understanding of the *bedrock procedural elements* that must be found to vitiate the fairness of a particular conviction. "[28]

Further, a rule is " new 'within the meaning of *Teague* if it 'breaks new ground,' 'imposes a new obligation on the States or the Federal Government,' or was not '*dictated* by precedent existing at the time the defendant's conviction became final.'"[29]

Old rules apply both on direct and collateral review.[30] A rule is old "if a 'court considering the defendant's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks

---

[27] 489 U.S. 288, 301 (1989).

[28] *U.S. v. Orocio*, 645 F.3d 630, 637 (3d Cir. 2011) (quoting *Teague* at 311).

[29] *U.S. v. Hong*, No. 10-6294, 2011 WL 3805763, *5 (10th Cir. 2011) (quoting *Graham v. Collins*, 506 U.S. 461, 467 (1993) (quoting *Teague* at 301) (parallel citations omitted).

[30] *Orocio* at 637 (citing *Whorton v. Bockting*, 549 U.S. 406, 416 (2007)).

was required by the Constitution.'"[31]

When the Supreme Court overrules a previous decision, it is far easier to determine that a new rule has been created.[32] But, this evaluation is more difficult when the Court "extends the reasoning of [its] prior cases."[33]

In *United States v. Bonilla*, the Ninth Circuit discussed the retroactive application of *Padilla*.[34] The court reviewed, on direct appeal, defendant's pre-sentence motion to withdraw his plea after learning of the deportation consequences it carried.[35] Though *Bonilla* was in a different procedural posture than the current Petition, the Circuit Court held that the lower court should have allowed the defendant to withdraw his plea as he was not properly informed of the likelihood of deportation prior to entering into the plea.[36] Other Circuit Courts that have issued opinions on retroactivity are split on the issue.[37] District courts in the Ninth Circuit,

---

[31] *Hong* at *5 (quoting *O'Dell v. Netherland*, 521 U.S. 151, 156 (1997) (parallel citations omitted).

[32] *Id.*

[33] *Id.* (quoting *Graham v. Collins*, 506 U.S. 461, 467 (1993)).

[34] 637 F.3d 980 (9th Cir. 2011).

[35] *Id.* at 981.

[36] *Id.* at 986.

[37] *See Chaidez v. U.S.*, 655 F.3d 684 (7th Cir. 2011) (*Padilla* announced a new rule that does not apply retroactively to prosecutions that are already final.); *U.S. v. Orocio*, 645 F.3d 630 (3d Cir. 2011) ("[B]ecause *Padilla* followed directly from *Strickland* and long-established professional norms, it is an 'old rule' for *Teague* purposes and is retroactively applicable on collateral review.") (citing *Teague v.*

even after *Bonilla*, are similarly split.[38]

Assuming arguendo that *Padilla* applies retroactively, Mr. Ferron still fails to satisfy the test for ineffective assistance of counsel as established by *Strickland*.

IV.   Ineffective Assistance of Counsel Standard and *Padilla*

Mr. Ferron filed his Motion to Vacate pursuant to 28 U.S.C. § 2255 as a means to challenge his conviction. The relevant portion of the statute outlines the burden the Defendant must establish:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that [1] the sentence was

---

*Lane*, 489 U.S. 288 (1989)); *U.S. v. Hong*, No. 10-6294, 2011 WL 3805763 (10th Cir. 2011) (The Supreme Court's decision in *Padilla v. Kentucky* did not apply retroactively to a case on collateral review.).

[38] *See Vardanyan v. Jackson*, No CV10-0730-JHN (DTB), 2011 WL 7039945 (C.D.Cal. Sept. 13, 2011) ("Section 2255(f)(3) is not applicable for commencing the limitations period because *Padilla* did not establish a new rule, but rather applied *Strickland* to a specific set of facts.") (citing *Luna v. United States*, No. 10CV1659 JLS (POR), 2010 WL 4868062, at *4 (S.D.Cal. Nov.23, 2010); *U.S. v. Hurtado-Villa*, Nos. CV-10-01814-FJM (MHB), CR-08-01249-PHX-FJM, 2011 WL 4852284 (D.Ariz. Aug. 12, 2011) ("*Padilla* did not create a 'new rule,' either procedural or substantive."); *Song v. U.S.*, Nos. CV 09-5184 DOC, CR 98-0806 DOC, 2011 WL 2533184, *2, n.1 (C.D.Cal. June 27, 2011) ("The Supreme Court expressly contemplated retroactive application when it decided *Padilla*."); *U.S. v. Krboyan*, Nos. 1:02-cr-05438 OWW, 1:10-cv-02016 OWW, 2011 WL 2117023, *9 (E.D.Cal. May 27, 2011) ("Based on the Ninth Circuit's retroactive application of *Padilla* in *Bonilla*, *Padilla* applies retroactively to Petitioner's writ of error coram nobis."); *Bawaneh v. U.S.*, Nos. CV-10-7805 CAS, CR-01-1134 CAS, 2011 WL 1465775, *2 (C.D.Cal. April 18, 2011) ("[P]etitioner concedes that *Padilla* did not create a new constitutional rule. Therefore, the decision in *Padilla* did not trigger the start of a limitations period pursuant to § 2255(f)(3).").

> imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The Defendant argues that his sentence is subject to collateral attack because he was denied his Sixth Amendment rights to effective assistance of counsel when determining whether to accept a plea because he was not properly advised of the risk of deportation.

### A. Ineffective Assistance of Counsel

The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defense."[39] The Sixth Amendment guarantee has two components, namely the right to counsel's undivided loyalty and the right to reasonably competent counsel.[40]

The standard for ineffective assistance of counsel claims comes from *Strickland v. Washington*.[41] *Strickland* established a two-prong test where a defendant must show not only that his attorney's representation was deficient but

---

[39] U.S. Constitution, Amendment VI.

[40] *See Cuyler v. Sullivan*, 446 U.S. 335, 344-45 (1980); *Wood v. Georgia*, 450 U.S. 261, 272 (1981).

[41] 466 U.S. 688 (1984).

also that the attorney's representation prejudiced his cause.[42] The defendant bears the burden of establishing that his attorney's performance was "so deficient that it fell below an objective standard of reasonableness."[43]

With respect to judicial scrutiny of an attorney's performance, the court must be "highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[44] This means that a defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[45]

In order for a defendant to establish prejudice, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."[46] A reasonable probability is one "sufficient to undermine confidence in the outcome."[47] Elaborating on the

---

[42] *Id.* at 693.

[43] *Silva* v. *Woodford*, 279 F.3d 825, 836 (9th Cir. 2002).

[44] *Strickland* at 689.

[45] *Id.*; *see also Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001) (Defendant "bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy.").

[46] *Strickland* at 694.

[47] *Id.*

threshold, *Strickland* states:

> It is not enough for [a defendant] to show that the errors had some conceivable effect on the outcome of the proceedings. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceedings.[48]

A court may first examine whether a defendant shows sufficient prejudice prior to engaging in an evaluation of whether counsel's performance was deficient.[49]

The Supreme Court has held that the *Strickland* two-prong test is also applicable in challenges to sentences pursuant to plea agreements, i.e. allegations of erroneous plea advice.[50]

In the context of the *Strickland* standard, *Padilla* states that in a § 2255 petition, in order to obtain relief, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."[51]

### V. Mr. Ferron's Petition is Not Supported by the Record

The record from the Change of Plea Hearing and the Imposition of Sentence Hearing is clear. Mr. Ferron would likely face deportation as a result of his plea. His attorney, Ms. Tatter, Dr. Aron Wolf and the Court all stated this fact. And,

---

[48] *Id.* at 693.

[49] *Id.* at 697.

[50] *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

[51] *Id.* at 1485 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000) (parallel citations omitted).

Mr. Ferron acknowledged the likelihood as well.

### A. Evidence in the Record

Mr. Ferron has not provided any affidavits to support his allegations in his petition. Nonetheless, the record has ample evidence to persuade the court that he was properly advised of the risk of deportation.

During his testimony regarding Mr. Ferron's competence, Dr. Aron Wolf testified that Mr. Ferron

> is willing to serve the time for the charges, but the thing that's most focused on him – for him is his immigration status. And he understood that the one charge that was dropped would have mandated that he be deported, and he wished to have at least some leeway to address whether he will be deported in the future.[52]

Mr. Ferron was very concerned about the prospect of being deported. But, it is clear that he understood that potential. The Court stated, after explaining to the Defendant that he had the right to go to trial, and in conjunction with explaining the consequences of his plea, that "[b]ecause of your immigration status, there's also a possibility that as a consequence of pleading guilty, you would be deported."[53] The Court asked whether Mr. Ferron understood the risk of deportation. He replied "[y]es, Your Honor."[54]

---

[52]Docket 67, tr. 9.

[53]*Id.* at tr. 25.

[54]*Id.*

At the Imposition of Sentence Hearing, Ms. Tatter explained in her Sentencing Recommendations that the court should impose a short jail term as the defendant would be deported, thus ensuring the safety of the community. Specifically, she stated:

> The Court should also think of the practical situation here about rehabilitation, deterrence and public safety. This person will be almost inevitably deported to Jamaica at an advanced age of fifty-some years . . . and the public will be protected because he's going to be in ICE custody upon his release of any sentence.[55]

In his allocution, Mr. Ferron stated his concern about deportation. "It's thirty-something years now I haven't been to [Jamaica], and they're going to deport me . . . ."[56]

When the Court gave its sentence, Judge Sedwick stated on the record the facts he was considering, including his concern about how Mr. Ferron would survive upon being deported. "I'm greatly concerned, and I'm sure Mr. Ferron is, too, about how he's going to survive when he gets back to Jamaica."[57] Continuing on, Judge Sedwick stated that Mr. Ferron "is an older man and he's going back to a country where even younger men can hardly ever find work . . . He does need to get himself squared away, he needs to understand who he is and where he's from

---

[55]Docket 68, tr. 32.

[56]*Id.* at tr. 37.

[57]*Id.* at tr. 40-41.

because inevitably, he's going back to where he's come from."[58]

It is painfully clear by the statements of the parties at these hearings that much attention was given to the issue of deportation. Mr. Ferron understood he would be deported. He acknowledged such at the hearing. And, there was much testimony about Mr. Ferron's competence, so there is not a concern that he was unable to understand what he was advised of regarding deportation. Mr. Ferron also stated that he was satisfied with the advice he received from his attorney, casting doubt on his allegations in this Petition.[59]

The Petition suggests that Mr. Ferron was led to believe he would not be deported by a statement made by the Government at Sentencing. Crandon Randell, Assistant United States Attorney stated: "[Mr. Ferron] managed to thwart deportation once, no reason to think he can't do it again."[60] But, Petitioner takes this statement out of context. Mr. Randell was referencing Mr. Ferron's re-entry following his initial deportation in 1973-1974. Mr. Ferron illegally re-entered the United States and "thwarted" deportation. It is clear that Mr. Randell was not supposing that Mr. Ferron would not be deported following his sentencing.

Mr. Ferron was deemed competent to enter a plea. Mr. Ferron acknowledged the risk of deportation associated with his plea. The Court and

---

[58]*Id.* at 41.

[59]Docket 67, tr. 22.

[60]Docket 68, tr. 34.

counsel for Mr. Ferron stated on the record that he would likely face deportation. There is no evidence in the record that Mr. Ferron was not advised that he would likely be deported as a result of his plea.

### B. Evidentiary Hearing

At Docket 56 the assigned District Judge instructed the parties to file requests for an evidentiary hearing within 30 days after the date the United States attorney filed an answer. Neither party requested an evidentiary hearing. And, Mr. Ferron has not filed any affidavits in support of his Petition.

In habeas proceedings, a defendant is entitled to an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[61] Moreover, "vague, palpably incredible, or frivolous allegations warrant summary dismissal of a section 2255 motion."[62]

The district court may deny a § 2255 motion without holding an evidentiary hearing if "(1) the petitioner's allegations, accepted as true, would not entitled him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or allege conclusions rather

---

[61] 28 U.S.C. 2255; *see also Frazer v. United States*, 18 F.3d 778, 780 (9th Cir. 1994); and *see* BRIAN R. MEANS, FEDERAL HABEAS MANUAL: A GUIDE TO FEDERAL HABEAS CORPUS LITIGATION § 4:2 (West ed., 2010) (quoting 28 U.S.C.A. § 2255(b)).

[62] DHILLON KHOSLA, 28 U.S.C. § 2255 CHECKLIST/UPDATED SUPPLEMENT TO HABEAS CORPUS OUTLINE p. 5 (2005) (citing *Frazer* at 781).

than statements of fact."⁶³ The Ninth Circuit has held that a petitioner's speculation is not an adequate basis for an evidentiary hearing.⁶⁴ Similarly, "conclusory allegations unsupported by specific facts are insufficient."⁶⁵

The record from the Change of Plea hearing and the Imposition of Sentence hearing directly contradict Mr. Ferron's allegation that he did not understand that he would likely be deported as a result of his plea agreement. This satisfies the second prong cited above as the allegations made by Mr. Ferron in his Petition are directly contradicted by the record. It is therefore not necessary to hold an evidentiary hearing in this matter.

## VI. Analysis

*Strickland*'s two-prong test requires that a defendant show not only that his attorney's representation was deficient but also that the attorney's representation prejudiced his cause.⁶⁶ In cases where *Padilla* is implicated, a defendant must also prove that had the defendant been properly advised regarding deportation, he would

---

⁶³*Id.* (citing *Sanders v. U.S.*, 341 F.3d 720, 722 (8th Cir. 2003)).

⁶⁴FEDERAL HABEAS MANUAL § 4:17 (citing *U.S. v. Zuno-Arce*, 209 F.3d 1095, 1103 (9th Cir. 2000)).

⁶⁵*Id.* (citing *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006), cert. denied, 127 S.Ct. 1877 (U.S. 2007) ("bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring . . . an evidentiary hearing."); *Williams v. Woodford*, 384 F.3d 567, 588 (9th Cir. 2004) (unsworn, conclusory assertion by counsel unsupported by proof does not provide a basis for an evidentiary hearing)).

⁶⁶*Id.* at 693.

have rejected his plea bargain.[67] But here, Mr. Ferron was properly advised of the deportation consequences of his plea and he accepted those risks and entered a plea. He was advised multiple times of deportation consequences. He was advised in a way that satisfies the requirement laid out in *Padilla*. Therefore, the Court need not address the retroactivity of *Padilla*.

### VII. Conclusion

Even assuming *Padilla* is retroactively applicable for cases on collateral review, Mr. Ferron is not entitled to relief. The record is clear. Mr. Ferron was properly advised, multiple times, of the deportation consequences of his plea agreement. He acknowledged such on the record. Mr. Ferron fails to meet either prong of *Strickland* and his attorney's performance satisfies the requirements in *Padilla*. The Magistrate Judge therefore recommends the court DENY MR. FERRON'S MOTION TO VACATE HIS SENTENCE. It is so recommended.

DATED this __26th__ day of January, 2012, at Anchorage, Alaska.

      /s/ John D. Roberts
      JOHN D. ROBERTS
      United States Magistrate Judge

//

//

---

[67] *See Padilla* at 1485 (citing *Roe* at 480) (parallel citations omitted).

Pursuant to Rule 59(b)(3), Federal Rules of Criminal Procedure, **any objections will be considered by the District Court Judge** who will accept, reject, or modify the recommendation, or resubmit the matter to the Magistrate Judge for additional consideration and recommendation. Failure to object in accordance with this rule waives a party's right to review.

Objections to this report and recommendation shall be served and filed no later than **CLOSE OF BUSINESS, Friday, February 10, 2012**. Responses to objections are due by **CLOSE OF BUSINESS, on Friday, February 24, 2012**. Objections and responses shall not exceed 5 pages in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support.